IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2025

## STATE OF TENNESSEE v. REX A. MOORE

**Appeal from the Criminal Court for Knox County**
**Nos. 118748, 122449, 126575      G. Scott Green, Judge**

_____

**No. E2025-00278-CCA-R3-CD**

_____

The Defendant, Rex A. Moore, pleaded guilty to theft of property and two counts of violating the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 ("Sexual Offender Registry"). The trial court imposed an effective four-year sentence and suspended the sentences, placing the Defendant on probation. Thereafter, the Defendant violated the terms of his probation by misrepresenting his residence in violation of the Sexual Offender Registry requirements and by assaulting a corrections officer while incarcerated. After a hearing, the trial court fully revoked the Defendant's suspended sentences and ordered him to serve his sentences in confinement. On appeal, the Defendant argues that the trial court abused its discretion by fully revoking his suspended sentences and by failing to consider lesser sanctions. Upon our review, we respectfully affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which KYLE A. HIXSON and STEVEN W. SWORD, JJ., joined.

J. Liddell Kirk, Madisonville, Tennessee (on appeal) and Paul Parks Dance, Knoxville, Tennessee (at hearing), for the appellant, Rex A. Moore.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Charme P. Allen, District Attorney General; and Heather N. Good, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

In February 2022, the Defendant pleaded guilty to one count of theft of property and two counts of failing to comply with the Sexual Offender Registry. The trial court imposed an effective sentence of four years and ordered that the sentence be served on probation.

On July 26, 2024, the trial court issued a probation warrant alleging that the Defendant had misrepresented his residence in contravention of the Sexual Offender Registry requirements. A later amendment to the warrant alleged that, while he was incarcerated, the Defendant committed a felony assault against a Knox County corrections officer. The trial court convened a revocation hearing on September 20, 2024.

### A.   REVOCATION HEARING

#### 1.   Testimony of Probation Officer

The Defendant's probation officer, Johnny Caldwell, testified that he had supervised the Defendant for about a year and a half. He stated that the Defendant had been subject to the Sexual Offender Registry since the late 1980s and had several prior violations, including "four or five" in the previous eighteen months.

Officer Caldwell explained that the Defendant was required to report any change of residence. On May 30, 2024, the Defendant texted that he was leaving the hotel where he had been staying and had secured a room at the Gateway Inn on Asheville Highway. He then appeared at Officer Caldwell's office on June 6, 2024, and completed registration paperwork identifying the Gateway Inn as his residence.

During a residence check two weeks later, Officer Caldwell received no answer at either of the two rooms the Defendant had previously identified, and he concluded that "no one was residing there." The hotel manager later confirmed through a receipt that the Defendant had stayed only one night on June 3, 2024. When Officer Caldwell met with the Defendant shortly thereafter, the Defendant admitted that he had not been staying at the hotel and had been "here and there" instead.

Officer Caldwell further stated that although transient offenders are required to wear GPS monitors, he had not imposed that condition in this case because the Defendant claimed to have a fixed address. He also reported that the Defendant had been evicted from a previous hotel after subleasing the room to others, conduct that was contrary to the Sexual Offender Registry requirements.

### 2. Defendant's Testimony

The Defendant testified that Officer Caldwell had instructed him not to return to the office and to communicate only by text message. He stated that he regularly texted updates to Officer Caldwell and provided photographs and receipts documenting his hotel stays.

The Defendant further testified that he initially spent one night in Room 231 at the Gateway Inn before moving to another room and then briefly leaving the hotel. After he could no longer afford the room, he slept in his car for two nights. He then returned to the Gateway Inn, paid $300 for an extended stay in Room 240, and claimed that he remained there for two to three weeks. He stated that he sent Officer Caldwell photographs of Room 240 and that the officer visited him there during that period.

At the close of this testimony, the court rescheduled the hearing and issued a subpoena duces tecum directing the hotel manager to produce records of the Defendant's stay.

### 3. Continued Proceedings and Additional Evidence

When the hearing resumed on October 10, 2024, the hotel manager, Tim Patel, produced the Gateway Inn's records, which were admitted as an exhibit. The court then continued the matter again.

When the hearing reconvened on January 23, 2025, the parties agreed to introduce the audio recording of a preliminary hearing concerning the Defendant's alleged assault on a corrections officer on December 10, 2024. The recording reflected testimony that the Defendant bit the officer during a jail altercation and that the Defendant asserted "temporary insanity" as a defense.

The Defendant requested a referral to Mental Health Court. He said that he was seeking help and had struggled to find housing because of his offender status and limited

income.  He told the court that he had located a potential residence for $1,000 per month and might qualify for subsidized housing.

### B.    TRIAL COURT'S RULING

In announcing its ruling, the trial court stated that it had "probably been way too lenient" with the Defendant and that he was "a very bright man" who did not suffer from mental health issues but instead had "a manipulation issue."  The court found that the Defendant was "clearly in violation of the terms and conditions" of his probation and noted that it had given him "several different chances on several different occasions," but that "the only responses being is you just go out and violate again and then try to twist the system to fit you."  Referring to the documents admitted into evidence, the court stated that the motel records "directly contradict what [the Defendant] testified to under oath about when he said he was there."

The court entered the written revocation order on January 23, 2025, finding expressly that "the defendant has been guilty of violating the laws of this State."  Although the Defendant thereafter filed an untimely notice of appeal, this court waived the timely filing requirement in the interest of justice and allowed this appeal to proceed.  *See* Tenn. R. App. P. 4(a).

### STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'"  *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022).  The principal issue in this case concerns the propriety of the trial court's decision to fully revoke the Defendant's suspended sentences.

We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record."  *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022).  However, if the trial court does not make such findings, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings."  *Id.*  In this case, because the trial court made sufficient findings on the record to support its decisions regarding the violation and consequence determinations, we review those decisions for an abuse of discretion, applying a presumption of reasonableness.

- 4 -

**ANALYSIS**

In this appeal, the Defendant argues that the trial court abused its discretion by revoking his probation and ordering him to serve the balance of his sentences in confinement. He asserts that his alleged violations were the product of housing instability and financial hardship rather than willful misconduct and that the court fully revoked his sentences without considering alternative sanctions.

The State responds that the trial court acted within its discretion and that the record supports full revocation of the suspended sentences. It asserts that the Defendant's conduct—including providing false information about his residence and committing a new assault while incarcerated—constituted serious, non-technical violations that demonstrated his unwillingness or inability to comply with the conditions of probation. The State maintains that the trial court's findings were adequate and that confinement was an appropriate consequence of those violations. We agree with the State.

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b) (2025). The trial court may also require the defendant to comply with various conditions of probation, provided that those conditions are suitable for facilitating rehabilitation or protecting the community's safety. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of [a] probation sentence, however, 'is [the] rehabilitation of the defendant,' . . . and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996))), *no perm. app. filed*; *see also* Tenn. Code Ann. § 40-28-302(1) (2025).

As long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *See State v. Rand*, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (2025). As such, the nature of a probation revocation proceeding involves a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. As our supreme court confirmed in *Dagnan*, the first step is to determine whether the defendant has violated a condition of probation, and the second is to determine the appropriate consequence of that violation. *Id.*

## A.    THE VIOLATION DETERMINATION

As to the first step, a trial court may not find a violation of a probation condition unless the record establishes that violation by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Williams*, 673 S.W.3d 255, 259 (Tenn. Crim. App. 2023). Relevant to this case, "compliance with our state laws is an automatic condition of a suspended sentence, and when a trial court learns that a defendant has violated the law, it has the power to initiate revocation proceedings." *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). When a probationer commits new crimes while serving a suspended felony sentence, the trial court's authority to fully revoke probation is generally limited to non-technical violations consisting of new felonies or Class A misdemeanor offenses. *See* Tenn. Code Ann. § 40-35-311(g).[1]

In this case, the Defendant was on probation following three felony convictions, and the trial court found that the Defendant violated the conditions of his probation by committing new crimes. On appeal, the Defendant does not contest that he committed non-technical violations of his probation by engaging in new criminal conduct. As such, we conclude that the record supports a finding that the Defendant committed two non-technical violations of probation.

## B.    THE CONSEQUENCE DETERMINATION

As to the second step, "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *Rand*, 696 S.W.3d at 106 (citation and internal quotation marks omitted). As the supreme court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *See Dagnan*, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation. Tenn. Code Ann. § 40-35-102(3)(C) (2025); *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no*

---

[1]    If the new criminal conduct consists of a Class B or C misdemeanor, the trial court may fully revoke a defendant's suspended felony sentence when the conduct results in a fourth or subsequent revocation. *See* Tenn. Code Ann. § 40-35-311(e)(1); *State v. Penny*, No. W2023-00912-CCA-R3-CD, 2024 WL 1803264, at *2 (Tenn. Crim. App. Apr. 25, 2024), *perm. app. denied* (Tenn. Oct. 25, 2024).

*perm. app. filed*.  A trial court may also consider whether the violation shows that the defendant is a danger to the community or individuals in it.  Tenn. Code Ann. § 40-28-302(1).

The trial court identified two principal reasons for fully revoking the Defendant's suspended sentences.  First, it emphasized that the Defendant's violations consisted of new criminal offenses.  The nature and seriousness of the violation are proper considerations in the consequence determination.  *See Dagnan*, 641 S.W.3d at 759 n.5.  The Public Safety Act of 2016 expressly authorizes trial courts to consider whether a probationer can "remain compliant and crime-free in the community" when determining the appropriate consequence.  Tenn. Code Ann. § 40-28-302(2).  Consistent with that directive, this court has recognized that "[t]he rehabilitative goals of probation are directed precisely toward the goal of lawful conduct and public safety.  Thus, this [c]ourt has long recognized that where the probationer continues to commit new crimes, the beneficial aspects of probation are not being served."  *State v. Everett*, No. E2022-00189-CCA-R3-CD, 2022 WL 16643628, at *4 (Tenn. Crim. App. Nov. 3, 2022) (citation omitted), *no perm. app. filed*.

We agree with the trial court that the Defendant's conduct was serious.  His false reporting of his residence impeded the probation officer's ability to supervise him effectively in the community.  His subsequent assault on a corrections officer likewise demonstrated continued disregard for lawful authority.  And each act constituted a new felony offense.  *See* Tenn. Code Ann. §§ 40-39-208(b); 39-13-116 (2025).  As this court has explained, "[t]he seriousness of the violation only increases when the probationer continues to commit new felony offenses while on probation for a felony."  *Everett*, 2022 WL 16643628, at *4.  These circumstances weigh heavily against continued community supervision and support the trial court's reliance on the nature and seriousness of the violations.

The Defendant's actions also reflected a continuation of the same type of behavior that led to his original probationary status.  When a probationer repeats the same type of criminal conduct, the behavior "shows that the Defendant cannot or will not abide by the first rule of probation: maintaining lawful conduct."  *State v. Tobin*, No. E2022-00604-CCA-R3-CD, 2023 WL 176108, at *4 (Tenn. Crim. App. Jan. 9, 2023), *no perm. app. filed*.  This pattern further indicates that the rehabilitative purposes of probation were no longer being served.  For these reasons, we conclude that the trial court properly considered the Defendant's new criminal convictions as part of the consequence determination.

Second, the court observed that it had offered the Defendant "several different chances on several different occasions," but that his "only responses" were to "go out and

violate again." A probationer's prior violations of the terms of probation are also appropriate considerations in the consequence determination. *See Dagnan*, 641 S.W.3d at 759 n.5. Indeed, the Public Safety Act provides that "a court may consider an individual's supervision and sanctions history when adjudicating subsequent violations." Tenn. Code Ann. § 40-28-305(e) (2025). Prior violations and sanctions may also show that a defendant "has poor potential for rehabilitation and is unwilling to engage in rehabilitative efforts." *State v. Thompson*, No. M2023-01424-CCA-R3-CD, 2024 WL 3549189, at *4 (Tenn. Crim. App. July 26, 2024), *no perm. app. filed*; *see also State v. Evans*, No. E2024-00392-CCA-R3-CD, 2025 WL 354637, at *5 (Tenn. Crim. App. Jan. 31, 2025) ("The failure of lesser sanctions to correct behavior may show that the defendant is unwilling to engage in rehabilitative efforts and demonstrate that he or she is no longer suitable for probation."), *no perm. app. filed*.

In this case, we agree that prior revocation proceedings and the use of lesser sanctions did not successfully reinforce for this Defendant the importance of complying with the law or his probation conditions. *See State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *4 (Tenn. Crim. App. Dec. 16, 2022) (recognizing that "measures less restrictive than confinement were unsuccessful for Defendant and reflect poorly on Defendant's potential for rehabilitation."), *no perm. app. filed*. We conclude that the trial court appropriately considered these factors as part of the consequence determination.

Pushing against these conclusions, the Defendant contends that the trial court abused its discretion by failing to consider a lesser sanction, such as ordering a period of split confinement or reinstating him to full probation. We respectfully disagree. The Public Safety Act *requires* trial courts to consider full revocation when the probationer's violation constitutes "a significant risk" to the community at large that "cannot be appropriately managed in the community." Tenn. Code Ann. § 40-28-302. Indeed, the trial court may only consider sanctions other than a full revocation when interventions exist that "may assist the offender to remain compliant and crime-free in the community." *Id.*; *State v. Drake*, No. E2024-00165-CCA-R3-CD, 2024 WL 4719132, at *5 (Tenn. Crim. App. Nov. 8, 2024), *no perm. app. filed*.

In this way, the consequence determination "is not merely focused on the probationer's rehabilitative needs alone." *State v. Banning*, No. E2022-00188-CCA-R3-CD, 2022 WL 10225186, at *5 (Tenn. Crim. App. Oct. 18, 2022), *no perm. app. filed*. Instead, the court must also consider whether those needs "can be effectively addressed *in the community* rather than in custody." *Id.* (emphasis in original); *Tobin*, 2023 WL 176108, at *5. The trial court appropriately considered that the Defendant's repeated unwillingness

to comply with his probation conditions represented an unreasonable risk to community safety.

Moreover, our role on appeal is not to decide whether the trial court selected the "best" or most lenient option in the range of possible consequences. *See State v. Thompson*, No. M2023-01424-CCA-R3-CD, 2024 WL 3549189, at *4 (Tenn. Crim. App. July 26, 2024) (citing *State v. Willis*, 496 S.W.3d 653, 729 (Tenn. 2016)), *no perm. app. filed*. Instead, our task is to determine whether the trial court applied the correct legal standards, supported its findings with evidence in the record, and exercised its discretion by making a reasoned choice among the acceptable alternatives. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Here, the record supports the trial court's determination that continued probation would neither advance rehabilitation nor ensure public safety. In light of the Defendant's new felonious criminal conduct and his demonstrated inability to comply with the conditions of community supervision, the trial court acted within its discretion to fully revoke the Defendant's suspended sentences. The Defendant is not entitled to relief.

## CONCLUSION

In summary, we hold that the record supports the trial court's determination that the Defendant committed non-technical violations of his probation. We further hold that the trial court acted within its discretion in fully revoking the Defendant's suspended sentences as a consequence of those violations. Accordingly, we respectfully affirm the judgments of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE